Argued 4 October, decided 30 October, 1906.

**OVERBECK *v.* ROBERTS.**

87 Pac. 158.

PLEADING—AIDER BY VERDICT.

1. A technical objection that a complaint was not sufficiently explicit in its detai's of fact and contained some conclusions, will not be entertained after verdict, even though the point was urged on demurrer, where it is evident that the defendant was not at all misled.

For example: In an action by a broker against a customer to recover an amount due on a sale and purchase of cotton on a cotton exchange, the complaint alleged the sale and purchase of a certain number of bales of cotton at a specified price per pound, and the complaint and answer contained allegations involving an assumption that a bale of cotton weighed 500 pounds. *Held*, that a contention that the complaint was insufficient because the number of pounds in a bale or the aggregate number of pounds bought or sold or the price per bale ·was not stated was too late after verdict for plaintiff, notwithstanding a demurrer on that ground was interposed and overruled.

TELEGRAMS AS DOCUMENTARY EVIDENCE.

2. In an action by a broker against a customer to recover an amount due on a sale and purchase for defendant on an exchange, telegrams sent by plaintiff to its agents at the place of the exchange, directing such sales and purchases, are competent to show that an actual and *bona fide* sale and purchase was contemplated, the telegrams being the original memoranda made at the time.

STOCK GAMBLING—BURDEN OF· PROOF.

3. In an action by a broker against a customer to recover an amount due plaintiff on transactions conducted by the broker for defendant on stock exchanges, the burden of proving that the transactions were a mere cover for differences is on defendant.

From Multnomah: JOHN B. CLELAND, Judge.

Statement by MR. CHIEF JUSTICE BEAN.

This is an action by Overbeck, Starr & Cooke Co., a corporation, to recover from J. C. Roberts a balance on the sale and purchase of cotton. The complaint alleges that the plaintiff is a corporation engaged in the business of a commission merchant and stock broker in the City of Portland; that on January 15, 1904, at defendant's instance and request and by his order, it sold on the New York Cotton Exchange, through its eastern correspondent, 100 bales of July cotton (the term "July cotton" meaning merchantable cotton to be delivered in July, 1904), at $0.1399 per pound; that plaintiff thereby, at defendant's re-

quest and for his benefit and advantage, became liable to furnish
and deliver at New York in the month of July, 1904, 100 bales
of merchantable cotton for the agreed price of $0.1399 per
pound, amounting to $6,995; that plaintiff was to receive $10
commission as brokerage on such sale, and defendant was to
bear all loss that might accrue on account thereof if cotton
should rise in value and receive all profits that might accrue if
cotton should decrease in value; that on February 1, 1904,
cotton had advanced to $0.1742 per pound, and on that day
defendant ordered and directed plaintiff to purchase at the mar-
ket price 100 bales of cotton for July delivery to cover the sale
of January 15, 1904, and agreed and promised to pay plaintiff
a commission of $10 on such purchase; that in accordance with
the order and direction of defendant, plaintiff purchased on
February 1, 1904, 100 bales of July cotton at $0.1742, the mar-
ket price, per pound, to cover the January sale; that by reason
of the sale of January 15, 1904, and the purchase of February
1, 1904, the defendant became indebted to plaintiff in the sum
of $1,735; that no part of the same has been paid except $263.75,
and there is now due, owing and payable to plaintiff from the
defendant the sum of $1,471.25.   For a further and separate
cause of action it is alleged that on September 23, 1903, plaintiff
purchased for defendant on the New York Stock Exchange 25
shares of the common stock of the United States Steel Corpora-
tion at $17.50 per share, amounting to $437.50, defendant agree-
ing to pay 6 per cent interest on such amount and deposited
with plaintiff $75 as margin against losses on such purchase;
that on December 30, 1903, at defendant's request, plaintiff sold
such stock for $12.50 a share, receiving $312.50 therefor; that
defendant agreed to pay plaintiff a brokerage of one-fourth of
1 per cent on the amount of such purchase and sale and whatever
loss might accrue by reason of the same; that defendant thereby
became indebted to plaintiff in the sum of $67.95, less $12.50,
dividend received on such stock by it and passed to defendant's
credit.

A demurrer to the complaint because it did not state facts

sufficient to constitute a cause of action was overruled. The defendant answered denying all the material allegations of the complaint, and for a further defense alleged that on January 18, 1904, the plaintiff notified defendant that it had sold 100 bales of cotton for his account on the New York Cotton Exchange for July delivery at $0.1399 per pound; that such sale was made without defendant's authority, and he refused to ratify the same unless plaintiff would agree to carry the trade until closed out by the mutual consent of both parties, which plaintiff promised and agreed to do; that thereafter and on February 1, 1904, defendant, on the advice of the plaintiff and for the purpose of protecting such sale, instructed plaintiff to purchase for him 100 bales of July cotton at the market price, placing a stop loss thereon of $1 per bale; that on February 18, 1904, cotton had advanced to $0.1387, and defendant directed plaintiff to close the deal of January 15, but plaintiff claimed to have closed such deal on February 1 at $0.1399, whereby defendant lost the sum of $60 as profits, less $20 commission; that defendant had demanded of the plaintiff the sum of $40, but it had refused and still refuses to pay the same. For a further and separate defense, and by way of counterclaim to the second cause of action, it is alleged that defendant had advanced to the plaintiff from time to time various sums of money, and there is now a balance due defendant from plaintiff over and above the sum of $55.45, due plaintiff, of $89.30. A reply put in issue the new matter alleged in the answer and a trial was had by the consent of both parties before the court without the intervention of a jury. After hearing the evidence the court made findings of fact and conclusions of law in favor of the plaintiff and entered judgment accordingly. From this judgment the defendant appeals, contending (1) that the complaint does not state facts sufficient to constitute a cause of action; (2) that the court erred in admitting in evidence certain telegrams which passed between the plaintiff and its correspondent in Chicago, concerning the transactions referred to in the complaint; (3) that the court erred in overruling a

motion for nonsuit; and (4) that the findings of fact and conclusions of law are not supported by the testimony, and are not separately stated.                                    AFFIRMED.

For appellant there was a brief over the name of *Cake & Cake,* with an oral argument by *Mr. Harry Marion Cake.*

For respondent there was a brief over the name of *Dolph, Mallory, Simon & Gearin,* with an oral argument by *Mr. John M. Gearin.*

MR. CHIEF JUSTICE BEAN delivered the opinion.

1. The contention that the complaint does not state facts sufficient to constitute a cause of action, because the number of pounds of cotton in a bale, or the aggregate number of pounds bought or sold by the plaintiff on defendant's account, or the price per bale, is not stated, comes too late after verdict. The pleadings are framed, and the trial evidently proceeded, on the assumption that a bale of cotton on the exchange and in the market contains 500 pounds. The complaint avers that 100 bales at so much per pound amounted to a certain sum and the answer contains substantially a similar averment. It is alleged in the answer that by plaintiff's closing out the transaction on February 1, 1904, instead of on the 18th of that month, the defendant lost the difference between $0.1399 and $0.1387 per pound on 100 bales, to wit, $60—a result which could be obtained only by assuming that a bale of cotton contains 500 pounds. In addition to this, a statement of account was rendered to the defendant by the plaintiff in which the transaction between the parties was set out in a similar manner.

2. The telegrams offered and admitted in evidence were competent as tending to show that the transaction between plaintiff and defendant contemplated an actual and *bona fide* sale and purchase of cotton and was not a mere dealing in differences. The plaintiff had a leased wire from Chicago to its office in Portland, by means of which the telegrams were sent direct to its agent and memoranda made of them. When the plaintiff received the order of January 15, 1904, from defendant, to sell

100 bales of July cotton, it immediately wired to its agents, Logan & Bryan, who had offices in Chicago and New York: "Sell 100 July cotton," and when it received the order to buy on February 1, it wired them: "Buy 100 July cotton market." The telegrams offered were the original memoranda made at the time, and were competent evidence for the purpose stated.

3. A contention is made that the pleadings and evidence show that the transactions between plaintiff and defendant were merely dealings in futures or a gambling in differences, and that no actual purchase or sale of a commodity was contemplated, but the understanding was that a settlement was to be made on the differences in the market quotations from day to day until the deal was closed, and therefore the transaction was illegal and void, and will not be enforced by the courts. No such facts are pleaded in the answer, nor was any request made for findings to that effect. The answer and requested findings assume and state that a sale of cotton was made by plaintiff on defendant's account "on the New York Cotton Exchange," and the evidence is all to the effect that the transaction was actual and *bona fide*. The witnesses for the plaintiff, and there was no contradiction of them, testify that the transactions between plaintiff and defendant were actual and *bona fide* sales of cotton on the New York Cotton Exchange; that plaintiff had a private wire from its office in Portland to its agents in Chicago, and, when an order was given it to sell or buy, it telegraphed the order to them and they executed it on the exchange, and the price of the execution was wired back to the plaintiff. It therefore appears that the purchase and sale made by the plaintiff on defendant's account was an actual and *bona fide* transaction on the New York Cotton Exchange and presumably in accordance with its rules and regulations. Such transactions have been uniformly held valid and legal on their face, and not mere wagering contracts or dealing in differences, and the burden of proving that they are invalid, as a mere cover for differences, is on the party who makes the assertion, and defendant offered no evidence on that subject: *Chicago Board of Trade* v. *Christie G. & S. Co.*

198 U. S. 236 (25 Sup. Ct. 637: 49 L. Ed. 1031) ; *Clews* v. *Jamieson,* 182 U. S. 461 (21 Sup. Ct. 845: 45 L. Ed. 1183) ; *Bangs* v. *Hornick* (C. C.), 30 Fed. 97; *Henning* v. *Boyle* (C. C.), 112 Fed. 397. We are of the opinion that, under the facts of this case, the court could not declare the transaction to be illegal and void.

4. The contention that the findings of fact are insufficient because the weight of the bales of cotton alleged to have been bought and sold by plaintiff on defendant's account, either singly or in the aggregate, is not given, is disposed of by what has already been said about the sufficiency of the complaint. There is no difficulty, as we read the findings, in ascertaining from them what the findings of fact were or the conclusions of law which the court drew from such facts, and this is all the statute requires when it provides that the findings of fact and conclusions of law shall be separately stated: *Weissman* v. *Russell,* 10 Or. 73.

There was no dispute as to the second cause of action, and plaintiff was not required to prove it. The complaint sets out the facts constituting the cause of action and alleges a balance due it thereon of $55.45; the answer pleads, as a counterclaim thereto, that there is a balance of $89.30 in plaintiff's hands, of money advanced by defendant "over and above the sum of $55.45, due and owing to the plaintiff," for which judgment is demanded, and when plaintiff commenced to offer evidence in support of its cause of action the defendant's counsel stated: "We do not dispute that."

There is no error in the record, and the judgment is affirmed.

AFFIRMED.